UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| RONALD COBB, Individually and For Others Similarly Situated<br><br>v.<br><br>DUKE ENERGY CORPORATION | Case No. 3:24-cv-107<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Pursuant to 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Ronald Cobb ("Cobb") brings this collective action to recover unpaid wages and other damages from Duke Energy Corporation ("Duke").

2. Duke employs Cobb as one of its Straight Time Employees (defined below).

3. Duke pays Cobb and its other Straight Time Employees by the hour.

4. Cobb and the other Straight Time Employees regularly work more than 40 hours a week.

5. But Duke does not pay Cobb and its other Straight Time Employees overtime.

6. Instead, Duke pays Cobb and its other Straight Time Employees the same hourly rate for all hours worked, including those worked after 40 in a workweek (a practice known as "straight time for overtime").

7. Indeed, Duke uniformly misclassifies Cobb and its other Straight Time Employees as exempt from overtime.

8. But Duke never paid Cobb and its other Straight Time Employees on a "salary basis" as required for any relevant overtime exemption.

9. And Duke applied its illegal straight time for overtime pay scheme to Cobb and its other Straight Time Employees regardless of any individualized differences.

1

10. Duke's uniform straight time for overtime pay scheme violates the Fair Labor Standards Act ("FLSA") by depriving Cobb and the other Straight Time Employees of the "time and a half" overtime premium they are owed for hours worked over 40 in a workweek.

## JURISDICTION & VENUE

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA, 29 U.S.C. § 216(b).

12. This Court has general personal jurisdiction over Duke because Duke's principal place of business is in Charlotte, North Carolina, and therefore, Duke resides in North Carolina.

13. Venue is proper because Duke is headquartered in Charlotte, North Carolina, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

14. Cobb has worked for Duke as a Nuclear Security Officer at the Huntersville McGuire Nuclear Station in Huntersville, North Carolina since approximately June 2008.

15. Throughout his employment, Duke paid Cobb straight time for overtime.

16. Cobb's written consent is attached as **Exhibit 1**.

17. Cobb brings this collective action on behalf of himself and all other similarly situated Duke employees who Duke paid under its illegal straight time for overtime pay scheme.

18. Duke paid each of these employees the same hourly rate for all hours worked, including those worked over 40 in a workweek, in willful violation of the FLSA.

19. The putative collective of similarly situated employees is defined as:

> **All Duke employees who were paid straight time for overtime at any time during the past 3 years (the "Straight Time Employees").**

20. Duke is a Delaware corporation headquartered in Charlotte, North Carolina.

21. Duke can be served through its registered agent: **CT Corporation System, 160 Mine Lake Court, Suite 200, Raleigh, North Carolina 27615**.

## FLSA COVERAGE

22. At all relevant times, Duke was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

23. At all relevant times, Duke was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

24. At all relevant times, Duke was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as phones, computers, and personal protective equipment—that have been moved in or produced for commerce.

25. At all relevant times, Duke has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

26. At all relevant times, Cobb and the other Straight Time Employees were Duke's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

27. At all relevant times, Cobb and the other Straight Time Employees were engaged in commerce or in the production of goods for commerce.

28. Duke uniformly paid Cobb and its other Straight Time Employees the same hourly rate for all hours worked, including those worked after 40 in a workweek.

29. Duke applied its illegal straight time for overtime pay scheme to the Straight Time Employees regardless of any alleged individualized factors, such as specific job title or precise geographic location.

30. As a result of Duke's uniform straight time for overtime pay scheme, Cobb and the other Straight Time Employees did not receive overtime at the premium rates required by the FLSA.

31. Specifically, by paying straight time for overtime, Duke did not pay Cobb and its other Straight Time Employees at least 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

32. Duke's uniform straight time for overtime pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

33. Duke bills itself as one of the largest energy and power companies in the country.[1]

34. To meet its business objectives, Duke hires workers, like Cobb and the other Straight Time Employees, to work in the various power plants that Duke owns and operates:[2]



---

[1] *See* https://www.duke-energy.com/our-company/about-us (last visited January 25, 2024).
[2] *See* https://www.duke-energy.com/our-company/about-us/power-plants (last visited January 25, 2023).

35. Duke uniformly pays Cobb and its other Straight Time Employees on an hourly basis.

36. Cobb and the other Straight Time Employees regularly work more than 40 hours a week.

37. But Duke does not pay Cobb and its other Straight Time Employees premium overtime wages.

38. Instead, Duke pays Cobb and its other Straight Time Employees the same hourly rate for all hours worked, including those hours worked after 40 in a workweek.

39. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal straight time for overtime pay scheme for similar work.

40. For example, Cobb has worked for Duke as a Nuclear Security Officer at the Huntersville McGuire Nuclear Station in Huntersville, North Carolina since approximately June 2008.

41. As a Nuclear Security Officer, Cobb's primary responsibilities include providing physical protection of Duke's nuclear power plant in compliance with Duke's policies, procedures, and protocols, as well as all NRC security requirements, such as monitoring and surveilling the facility, conducting foot and vehicle patrols of the facility, preventing theft of nuclear materials, escorting third parties through secure areas, conducting personnel and vehicle searches, and providing an armed response, if needed.

42. Cobb is Duke's hourly employee.

43. Specifically, Duke pays Cobb approximately $34 an hour.

44. Cobb reports his hours worked to Duke.

45. Duke's records reflect the hours Cobb worked each week.

46. Cobb regularly works more than 40 hours a week.

47. In fact, Cobb typically works 12 hours a day for 5 days a week (or 60 hours a week).

48. Despite knowing Cobb regularly works overtime, Duke does not pay him overtime wages for the hours he works over 40 in a workweek.

49. Instead, Duke pays him according to its uniform, illegal straight time for overtime pay scheme.

50. For example, during the two-week pay period ending on September 16, 2023, Cobb worked 73.75 hours (21.75 of which were overtime hours).

51. But Duke did not pay him "time and a half" for the 21.75 overtime hours he worked during that pay period.

52. Instead, Duke paid Cobb at the same hourly rate (approximately $34) for all 73.75 hours he worked that pay period—including his 21.75 hours of overtime:

| Description | Dates | Hours | Rate | Amount | YTD |
|---|---|---|---|---|---|
| Basic Life Ins | 09/03/2023 - 09/16/2023 | 0.00 | 0.00 | 2.23 | 42.37 |
| Holiday Pay | | 0.00 | 0.00 | 0.00 | 4,864.32 |
| Night Shift ST | 09/03/2023 - 09/16/2023 | 49.25 | .96 | 47.28 | 282.24 |
| Overtime Pay | 09/03/2023 - 09/16/2023 | 21.75 | 33.78 | 1,107.54 | 6,236.50 |
| Regular Pay | 09/03/2023 - 09/16/2023 | 52.00 | 33.78 | 1,756.56 | 13,106.64 |
| ST Disability 100% | | 0.00 | 0.00 | 0.00 | 23,510.88 |
| ST Incentive Co 100 | | 0.00 | 0.00 | 0.00 | 5,433.89 |
| Sick Leave | | 0.00 | 0.00 | 0.00 | 2,026.80 |
| Vacation Pay | | 0.00 | 0.00 | 0.00 | 7,701.84 |
| Earnings | | | | 2,913.61 | 63,205.48 |

53. So, rather than receiving approximately $51 an hour for each hour of overtime he worked, Cobb received the same hourly rate (approximately $34) for all hours worked—including his overtime hours.

54. Similarly, during the two-week pay period ending on January 21, 2023, Cobb worked 120.25 hours (44.25 of which were overtime hours).

6

Case 3:24-cv-00107-MOC-DCK     Document 1     Filed 01/30/24     Page 6 of 16

55. But Duke did not pay him "time and a half" for the 44.25 overtime hours he worked during that pay period.

56. Instead, Duke paid Cobb at the same hourly rate (approximately $34) for all 120.25 hours he worked that pay period—including his 44.25 hours of overtime:

| Earnings | | | | | |
|---|---|---|---|---|---|
| Description | Dates | Hours | Rate | Amount | YTD |
| Basic Life Ins | 01/08/2023 - 01/21/2023 | 0.00 | 0.00 | 2.23 | 4.46 |
| Holiday Pay | | 0.00 | 0.00 | 0.00 | 405.36 |
| Night Shift ST | 01/15/2023 - 01/21/2023 | 49.00 | .96 | 47.04 | 105.84 |
| Overtime Pay | 01/08/2023 - 01/21/2023 | 44.25 | 33.78 | 2,251.46 | 3,538.27 |
| Regular Pay | 01/08/2023 - 01/21/2023 | 76.00 | 33.78 | 2,567.28 | 3,783.36 |
| Vacation Pay | | 0.00 | 0.00 | 0.00 | 810.72 |
| Earnings | | | | 4,868.01 | 8,648.01 |

57. So, rather than receiving approximately $51 an hour for each hour of overtime he worked, Cobb received the same hourly rate (approximately $34) for all hours worked—including his overtime hours.

58. Because of Duke's uniformly applied straight time for overtime pay scheme, Cobb did not receive the required "time and a half" overtime premium for the hours he worked over 40 in a workweek in willful violation of the FLSA.

59. Duke pays its other Straight Time Employees according to the same illegal straight time for overtime pay scheme it imposes on Cobb.

60. Just as with Cobb, Duke pays its other Straight Time Employees on an hourly basis.

61. And just as with Cobb, Duke requires its other Straight Time Employees to report their hours worked to Duke.

62. Thus, just as Duke maintains records of the hours Cobb worked, it also maintains records of the hours the similarly situated Straight Time Employees worked each week.

7

63. Duke's records show the Straight Time Employees (like Cobb) regularly work more than 40 hours a workweek.

64. Every Straight Time Employee worked more than 40 hours in at least one workweek during the relevant period.

65. Indeed, like Cobb, the other Straight Time Employees typically work 12 hours a day for 5 days a week (or 60 hours a week).

66. Despite knowing its Straight Time Employees regularly work overtime, Duke does not pay them premium overtime wages.

67. Instead, Duke paid its Straight Time Employees the same hourly rate for all hours worked, including those worked after 40 in a workweek, in willful violation of the FLSA.

68. Duke never paid Cobb and its other Straight Time Employees on a "salary basis."

69. Duke does not pay Cobb and its other Straight Time Employees a guaranteed salary that is not subject to reduction based on the quality or quantity of work.

70. Rather, any alleged "salary" Duke purports to pay Cobb and the other Straight Time Employees (based on 40 hours worked each week) is subject to reduction—and is in fact reduced—based on the quality or quantity of work.

71. Indeed, if Cobb and the other Straight Time Employees work fewer than 40 hours in a week, Duke only pays them for the hours they actually work.

72. In other words, Duke subjects Cobb's and its other Straight Time Employees' purported base "salary" to reduction based on the quantity of work they perform (their actual hours worked).

73. But even if Duke had paid Cobb and the Straight Time Employees a guaranteed weekly salary (it didn't), the "salary" would not bear a "reasonable relationship" to their actual weekly earnings. *See* 29 C.F.R. § 541.604(b).

74. Thus, Duke never paid Cobb and the other Straight Time Employees on a "salary basis."

75. Because Duke fails to pay Cobb and its other Straight Time Employees on a "salary basis," these workers are all non-exempt employees entitled to premium overtime wages.

76. But Duke does not pay Cobb and its other Straight Time Employees premium overtime wages when they work more than 40 hours in a workweek.

77. Instead, Duke pays Cobb and its other Straight Time Employees under its uniform, illegal straight time for overtime pay scheme in willful violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

78. Cobb incorporates all other paragraphs by reference.

79. Like Cobb, the other Straight Time Employees are victimized by Duke's uniform, illegal straight time for overtime pay scheme.

80. Other Straight Time Employees worked with Cobb and indicated they were paid in the same manner, performed similar work, and were subject to Duke's same illegal straight time for overtime pay scheme.

81. Based on his experience with Duke, Cobb is aware Duke's illegal straight time for overtime pay scheme was imposed on the other Straight Time Employees.

82. The Straight Time Employees are similarly situated in the most relevant respects.

83. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime pay.

84. Any relevant exemption defenses would require Duke to pay the Straight Time Employees on a "salary basis."

85. Because Duke fails the "salary basis" test with respect to the Straight Time Employees, the specific job duties performed by those employees are largely irrelevant.

86. The only *relevant* inquiry is whether the Straight Time Employees were paid "straight time" when they worked more than 40 hours in a week (which, by definition, they were).

87. Therefore, the specific job titles or precise job locations of the various Straight Time Employees do not prevent collective treatment.

88. Rather, Duke's uniform straight time for overtime pay scheme renders Cobb and the other Straight Time Employees similarly situated for the purposes of determining their right to overtime pay.

89. Duke's records reflect the number of hours Cobb and the other Straight Time Employees worked each week.

90. Duke's records also show it paid Cobb and the other Straight Time Employees "straight time," instead of "time and a half," for their overtime hours.

91. The back wages owed to Cobb and the other Straight Time Employees can therefore be calculated using the same formula applied to the same records.

92. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Duke's records, and there is no detraction from the common nucleus of liability facts.

93. Therefore, the issue of damages does not preclude collective treatment.

94. Cobb's experiences are therefore typical of the experiences of the other Straight Time Employees.

95. Cobb has no interest contrary to, or in conflict with, the Straight Time Employees that would prevent collective treatment.

96. Like each Straight Time Employee, Cobb has an interest in obtaining the unpaid wages owed under federal law.

97. Cobb and his counsel will fairly and adequately protect the interests of the Straight Time Employees.

98. Indeed, Cobb retained counsel with significant experience in handling complex collective actions.

99. A collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

100. Absent this collective action, many Straight Time Employees will not obtain redress for their injuries, and Duke will reap the unjust benefits of violating the FLSA.

101. Further, even if some of the Straight Time Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

102. Indeed, the multiplicity of actions would create a hardship to the Straight Time Employees, the Court, and Duke.

103. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Straight Time Employees' claims.

104. Cobb knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

105. As part of its regular business practices, Duke intentionally, willfully, and repeatedly violated the FLSA with respect to Cobb and the other Straight Time Employees.

106. Duke's illegal straight time for overtime pay scheme deprived Cobb and the other Straight Time Employees of the premium overtime wages they are owed under federal law.

107. There are many similarly situated Straight Time Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

108. The Straight Time Employees are known to Duke, are readily identifiable, and can be located through Duke's business and personnel records.

## DUKE'S VIOLATIONS WERE WILLFUL AND DONE IN RECKLESS DISREGARD OF THE FLSA

109. Cobb incorporates all other paragraphs by reference.

110. Duke knew it was subject to the FLSA's overtime provisions.

111. Duke knew the FLSA required it to pay non-exempt employees, including Cobb and the other Straight Time Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

112. Duke knew Cobb and each Straight Time Employee worked more than 40 hours in at least one workweek during relevant period because it required these workers to report their hours worked to Duke.

113. Duke knew Cobb and the other Straight Time Employees were its hourly employees.

114. Duke knew it paid Cobb and its other Straight Time Employees on an hourly basis.

115. Duke knew it paid Cobb and its other Straight Time Employees straight time for overtime.

116. Duke knew it did not pay Cobb and its other Straight Time Employees on a "salary basis."

117. Duke knew it did not pay Cobb and its other Straight Time Employees any guaranteed salary that was not subject to reduction based on the quantity or quality of work.

118. Duke knew that any purported base "salary" it claims Cobb and the other Straight Time Employees received was not "reasonably related" to their actual earnings.

119. Thus, Duke knew its straight time for overtime pay scheme did not satisfy the "salary basis" test.

120. Duke knew it needed to pass the "salary basis" test to qualify for the exemptions it claimed with respect to Cobb and the other Straight Time Employees.

121. Nonetheless, Duke uniformly misclassified Cobb and its other Straight Time Employees as exempt employees and refused to pay them overtime wages.

122. Duke's decision to misclassify Cobb and its other Straight Time Employees as exempt was neither reasonable, nor was it made in good faith.

123. Duke's failure to pay Cobb and its other Straight Time Employees overtime wages was neither reasonable, nor was its decision not to pay these non-exempt employees overtime wages made in good faith.

124. Duke knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA.

125. Duke knowingly, willfully, and/or in reckless disregard carried out its illegal straight time for overtime pay scheme that deprived Cobb and the other Straight Time Employees of premium overtime wages in violation of the FLSA.

126. Indeed, Duke and its affiliated entities have been sued previously by employees for failing to pay overtime wages in violation of the FLSA and analogous state wage and hour laws, including for the same illegal straight time for overtime pay scheme that is the basis of this collective action. *See, e.g., Bowser v. Duke Energy Corp., et al.*, No. 2:16-CV-00482 (W.D. Pa.).

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

127. Cobb incorporates all other paragraphs by reference.

128. Cobb brings his FLSA claims as a collective action on behalf of himself and the other Straight Time Employees.

129. Duke violated, and is violating, the FLSA by employing non-exempt employees (Cobb and the other Straight Time Employees) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.

130. Duke's unlawful conduct harmed Cobb and the other Straight Time Employees by depriving them of the overtime wages they are owed.

131. Accordingly, Duke owes Cobb and the other Straight Time Employees the difference between the rate actually paid and the proper overtime rate.

132. Because Duke knew, or showed reckless disregard for whether, its straight time for overtime pay scheme violated the FLSA, Duke owes these wages for at least the past 3 years.

133. Duke is also liable to Cobb and the other Straight Time Employees for an additional amount equal to all their unpaid wages as liquidated damages.

134. Finally, Cobb and the other Straight Time Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

### JURY DEMAND

135. Cobb demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Cobb, individually and on behalf of the other Straight Time Employees, seeks the following relief:

    a. An Order designating this lawsuit as a collective action and authorizing notice to the Straight Time Employees allowing them to join this action by filing a written notice of consent;

b. An Order finding Duke liable to Cobb and the other Straight Time Employees for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

c. A Judgment against Duke awarding Cobb and the other Straight Time Employees all their unpaid overtime wages, liquidated damages, and any other penalties available under the FLSA;

d. An Order awarding attorneys' fees, costs, and expenses;

e. Pre- and post-judgment interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

Dated: January 30, 2024                                             Respectfully submitted,

**STRIANESE HUCKERT LLP**

By: */s/ Tamara Huckert*
Christopher Strianese
NC Bar No. 46918
Tamara Huckert
NC Bar No. 35348
3501 Monroe Rd.
Charlotte, North Carolina 28205
Phone: (704) 966-2101
chris@strilaw.com
tamara@strilaw.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:    (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:     (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR COBB AND
THE STRAIGHT TIME EMPLOYEES**